**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| STEWART ABRAMSON, individually and on behalf of a class of all persons and entities similarly situated, <br><br>        Plaintiff <br><br> vs. <br><br> RESPONSE NOW MEDICAL ALERT SYSTEMS, PNHC, LLC AND SALES STREAK, LLC <br><br>        Defendants. | Case No. 26-cv-582 |

**<u>PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

## **INTRODUCTION**

Defendants ask the Court to dismiss a Complaint that does exactly what Rule 8 requires—it identifies the parties, explains each Defendant's role in a coordinated telemarketing campaign, alleges the specific prerecorded message Plaintiff received, identifies the dates on which the calls occurred, describes the resulting transfer to Response Now's sales system, and explains why Response Now is liable under traditional agency principles. ECF No. 1 ¶¶ 16–45.

The Motion nevertheless argues that Plaintiff engaged in impermissible "group pleading" and failed to allege facts establishing liability. Those assertions ignore the Complaint's detailed factual allegations. Plaintiff does not merely allege that unidentified defendants engaged in unlawful conduct. Instead, Plaintiff alleges that Response Now admitted it sells its products through affiliates and specifically identified PNHC as the affiliate responsible for marketing its services. *Id.* ¶¶ 22, 34. Plaintiff further alleges that Sales Streak admitted responsibility for at least two of the telemarketing calls, that Sales Streak worked in coordination with PNHC, LLC, and that all three Defendants participated in the same coordinated telemarketing campaign. *Id.* ¶¶ 24–26.

The Complaint goes even further. It alleges the existence of a written Call Center Services Agreement under which PNHC agreed to perform outbound telemarketing on Response Now's behalf, generate sales of Response Now's products, submit orders directly into Response Now's order-processing system, and receive compensation for qualifying sales. *Id.* ¶¶ 35–40. Plaintiff additionally alleges that the calls resulted in his transfer to Response Now's sales system, that

1

Response Now charged his credit card, fulfilled the transaction, and delivered its product, thereby ratifying and benefiting from the telemarketing campaign. *Id.* ¶¶ 20–21, 43–45.

Rather than confront these factual allegations, Defendants repeatedly characterize them as "conclusory" while offering little authority addressing the specific pleading deficiencies they identify. Attorney argument cannot overcome well-pleaded factual allegations that must be accepted as true at this stage.

**<u>ARGUMENT</u>**

### I. THE COMPLAINT DOES NOT ENGAGE IN IMPROPER GROUP PLEADING.

Defendants' principal argument is that the Complaint impermissibly refers collectively to "Defendants." The argument ignores the Complaint as a whole.

As an initial matter, Defendants' "group pleading" argument misstates Rule 8. Rule 8 requires a "short and plain statement" sufficient to give each defendant fair notice of the claim and the grounds on which it rests; it "does not require detailed factual allegations." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Nor may a complaint be dismissed merely because the plaintiff's proof may later appear unlikely. *Id.* at 231. The question is whether the factual allegations, taken as true, plausibly suggest entitlement to relief and raise a reasonable expectation that discovery will reveal evidence supporting the claim. *Id.* at 234.

That standard is satisfied here. Courts evaluating multi-defendant claims do not require plaintiffs to plead every defendant's role in elaborate detail at the outset. In the multi-defendant

2

conspiracy context, the Court should not "compartmentalize" the alleged course of conduct, because the character and effect of coordinated conduct are evaluated by looking at the alleged scheme as a whole. *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 720 (E.D. Pa. 2011). Likewise, allegations "need not be detailed on a defendant-by-defendant basis"; defendants are entitled to "reasonable, not exhaustive, notice" of the allegations against them. *Id.* at 721. And a plaintiff need not allege that each participant performed the same task or participated in every detail of the alleged scheme, because different participants may perform different functions to bring about the same result. *Id.* at 725. That is precisely what Plaintiff has done.

The Complaint separately identifies each Defendant and specifically alleges each Defendant's role in the telemarketing campaign. Response Now admitted during Plaintiff's investigation that it did not itself place outbound telemarketing calls but instead marketed its products through affiliates and expressly identified PNHC as the affiliate responsible for marketing its services. ECF No. 1 ¶¶ 22–23. The Complaint separately alleges that Muhammad Abbas Hussain, acting on behalf of Sales Streak, admitted that Sales Streak was responsible for at least two of the prerecorded telemarketing calls Plaintiff received. *Id.* ¶ 24. The Complaint further alleges that Sales Streak coordinated its telemarketing activities with PNHC and Umar Jalil Malik, and that each entity used the same prerecorded message and identical transfer process as part of one unified telemarketing campaign designed to sell Response Now products. *Id.* ¶¶ 25–26.

Those are not generalized accusations. They are factual allegations assigning conduct to specific defendants while simultaneously alleging that the defendants acted jointly. Federal pleading rules permit precisely that. Defendants likewise ignore the allegations establishing Response Now's independent liability. Plaintiff alleges that Response Now entered into a written agreement retaining PNHC to conduct outbound telemarketing, compensated PNHC based upon qualifying sales, required consumer information to be entered directly into Response Now's systems, authorized downstream call centers, accepted the leads generated through the campaign, processed Plaintiff's purchase, charged Plaintiff's credit card, and delivered the product purchased as a result of the challenged calls. *Id.* ¶¶ 35–45.

Those allegations provide far more than repetitive generic references to defendants. *In re Processed Egg*, 821 F. Supp. 2d at 721. They identify each Defendant's alleged role in the coordinated campaign and give each Defendant fair notice of the factual basis for Plaintiff's claims. Defendants may dispute those allegations, but at the pleading stage the Court must accept them as true, draw all reasonable inferences in Plaintiff's favor, and evaluate the Complaint as a whole. See *Phillips*, 515 F.3d at 231, 234. The "group pleading" argument should therefore be rejected.

## II.   THE COMPLAINT ADEQUATELY ALLEGES WHICH DEFENDANT WAS RESPONSIBLE FOR THE CHALLENGED CALLS.

Defendants next argue that the Complaint fails to identify which Defendant placed each challenged call. Plaintiff alleges that Sales Streak admitted responsibility for at least two of the

4

prerecorded telemarketing calls Plaintiff received. ECF No. 1 ¶ 24. Plaintiff further alleges that Response Now admitted it marketed its products through affiliates and specifically identified PNHC as the affiliate responsible for marketing its services. *Id.* ¶¶ 22, 34. The Complaint also alleges that Sales Streak and PNHC worked together in a coordinated telemarketing campaign promoting Response Now's medical alert systems, that the calls used the same prerecorded message and transfer process, and that Response Now accepted the resulting leads, processed Plaintiff's purchase, charged his credit card, and fulfilled the sale. *Id.* ¶¶ 20–26, 35–45. At this stage, Plaintiff need only plausibly allege each Defendant's participation in the unlawful conduct. The Complaint does precisely that by identifying each Defendant's role in the campaign and alleging facts supporting both direct and vicarious liability. Accordingly, Defendants' request for dismissal on this basis should be denied.

### III.    THE COMPLAINT PLAUSIBLY ALLEGES RESPONSE NOW'S VICARIOUS LIABILITY.

Defendants similarly argue that Plaintiff fails to plead agency. Again, the Motion ignores the Complaint's factual allegations. The argument ignores the Complaint's factual allegations particularly in light of the fact that vicarious liability under the TCPA is a fact-intensive inquiry that does "not require the usual level of particularity" from the complaint. *Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 325 (D. Mass. 2020).

Plaintiff does not merely allege the existence of an affiliate relationship. Rather, Plaintiff alleges that Response Now admitted it markets its products through affiliates and specifically

identified PNHC as the affiliate responsible for marketing its services. ECF No. 1 ¶¶ 22, 34. The

Complaint further alleges that Response Now entered into a written Call Center Services

Agreement under which PNHC agreed to perform outbound telemarketing services promoting

Response Now's products, that Response Now compensated PNHC based upon qualifying sales,

required consumer information generated during those calls to be entered into Response Now's

order processing system, and contemplated additional downstream telemarketing agents. *Id.* ¶¶

35–40. Plaintiff further alleges that Response Now accepted the leads generated through those

calls, transferred Plaintiff into its sales system, charged Plaintiff's credit card, fulfilled the

resulting sale, and delivered its product. *Id.* ¶¶ 20–21, 43–45. Plaintiff further alleges that the

Call Center Services Agreement expressly contemplated that PNHC would utilize additional call

centers and subcontractors to market Response Now's products, making the participation of Sales

Streak entirely consistent with the contractual relationship alleged in the Complaint. ECF No. 1

¶¶ 38–40.

The standard recognizes that "the information necessary to connect all the players is

likely in [Defendants'] sole possession." *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d

1292, 1301 (D. Nev. 2014). To state a claim that a defendant violated the TCPA based on a

theory of vicarious liability, the plaintiff "must plausibly allege [only] that [a third party] was

acting as an agent of [defendant], i.e. that [defendant] exercised control over, ratified or openly

authorized [the third party's] actions." *Rosenberg,* 435 F. Supp. 3d at 325.

6

Courts consistently recognize that assessing vicarious liability for TCPA violations is a fact-intensive inquiry inappropriate for resolution under Rule 56, let alone Rule 12(b)(6). *See e.g.*, *Kristensen*, 12 F. Supp. 3d at 1302 (denying motion to dismiss TCPA claims when plaintiff had sufficiently plead "a plausible agency relationship based on actual authority (arising through contractual relationships)").[1] The 2013 FCC Ruling held that called parties may obtain "evidence of these kinds of relationships … through discovery, if they are not independently privy to such information." 2013 FCC Ruling ¶ 46.

"An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Restatement (Third) of Agency § 2.01 (2006).  Actual authority can be implied, through words or conduct.  *Id.* § 2.01 cmt. b.  The principal need only have the right to control the agent; the agency exists even if the

---

[1] *See also Brodsky v. HumanaDental Ins. Co.*, No. 10 C 3233, 2014 U.S. Dist. LEXIS 80790 (N.D. Ill. June 12, 2014) (denying defendant's motion for summary judgment as to vicarious liability claim for violations of the TCPA's "junk fax" provisions); *McCabe v. Caribbean Cruise Line, Inc.,* No. 13-CV-6131, 2014 U.S. Dist. LEXIS 91116 (E.D.N.Y. July 3, 2014) (denying motion to dismiss TCPA vicarious liability claims); *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1377 (S.D. Fla. 2014) ("[S]ummary judgment on vicarious liability is appropriate only in cases where evidence of the relationship is clear and unequivocal."); Creative Montessori Learning Ctr. v. Ashford Gear, LLC, No. 09 C 3963, 2014 U.S. Dist. LEXIS 27758 (N.D. Ill. Mar. 3, 2014); *Imhoff Inv., LLC v. SamMichaels, Inc.*, 2014 U.S. Dist. LEXIS 4965, at *19 (E.D. Mich. Jan. 15, 2014) (denying plaintiff's motion because the "issue of agency turns on the control exercised" by the alleged principal, "which cannot be determined as a matter of law").

principal does not exercise that right. *See Schutz v. Arrow Fin. Servs., LLC*, 465 F.Supp.2d 872, 877 (N.D. Ill. 2006).

Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c. "[A]pparent authority can arise in multiple ways and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c). A principal can make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

The fundamental principle of ratification is that one may not accept the benefits of a transaction without also bearing its legal consequences.  Restatement (Third) of Agency § 4.07 cmt. b (2006).  "The sole requirement for ratification is a manifestation of assent or other conduct indicative of consent by the principal. To be effective as a ratification, the principal's assent need not be communicated to the agent or to third parties whose legal relations will be affected by the ratification." *Id.* § 4.01 cmt. b.  "[W]hen a person ratifies another's act, the legal consequence is that the person's legal relations are affected as they would have been had the actor been an agent acting with actual authority at the time of the act." *Keim v. ADF Midatlantic, LLC,* No. 12-80577-CIV-MARRA, 2015 U.S. Dist. LEXIS 159070, at *27 (S.D.

8

Fla. Nov. 9, 2015) (Seller's acceptance of benefits of telemarketer's TCPA violations constitutes ratification, precluding dismissal.).

These allegations, coupled with the factual allegations linking Response Now to the call to Plaintiff, are sufficient to survive Defendant's Motion to Dismiss. *See Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 829 (N.D. Ill. 2016) ("[I]n their amended consolidated complaint, plaintiffs repeatedly alleged that '[d]efendants and/or their agents made unsolicited telephone calls' in violation of the TCPA…. The bottom line is that defendants have been on notice since near the outset of the case that plaintiffs seek to hold them vicariously or jointly liable, and that is all plaintiffs were required to do."). As other federal courts have held, the idea that Response Now, or any defendant, could simply hire a third party to physically dial the calls and be absolved of liability is "absurd indeed". *See Birchmeier v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 2012 U.S. Dist. LEXIS 182536, at *3 (N.D. Ill. Dec. 28, 2012) ("To offer an example, suppose that A, a well-heeled entity that wants to sell a product or service, stands next to B, an impecunious defendant, and directs B to place unsolicited, prerecorded calls to consumers on their cell phones. Defendants' position, it appears, is that only B, the impecunious dialer, would be liable and that A would get off scot-free. A Congressional enactment that permitted this would be absurd indeed. Fortunately that is not the law under the TCPA.") This view of liability under the TCPA is entirely consistent with the Third Circuit's instruction that "[b]ecause the TCPA is a remedial statute, it should be construed to benefit consumers." *Gager*

9

*v. Dell Financial Services*, LLC, 727 F.3d 265, 271 (3d Cir. 2013) (citing *Lesher v. Law Offices of Mitchell N. Kay, P.C.*, 650 F.3d 993, 997 (3d Cir. 2011)).

The Plaintiff's detailed allegations about the nature of the relationship go above what is required at this stage. While denying a similar motion to dismiss, a court in the Middle District of Pennsylvania held:

> Fannie Mae derides plaintiff's allegations as "only conclusory, boilerplate references to Resolve placing calls 'on behalf of' Fannie Mae." (Reply Br. at 11). Plaintiff's pleading, however, was more thorough and complete than Fannie Mae's quoting of it. Plaintiff avers that "Defendant Resolve left such voice messages on Plaintiff's cellular phone, on Defendant Fannie Mae and Defendant Green Tree's behalf, at their direction, and under their control," and "Defendant Resolve left multiple (subsequent) similar voice-messages on Plaintiff's cellular phone, Defendant Fannie Mae and Defendant Green Tree's behalf[sic], at their direction, and under their control." (Compl. ¶¶ 13, 15)(emphasis added). This pleading, by itself, is enough to state a claim, plausible on its face, that Fannie Mae is vicariously liable for the phone calls made by Resolve. See Ashcroft v. Iqbal, 556 U.S. at 678.
>
> Moreover, these allegations are not mere "conclusions," as Fannie Mae asserts, because plaintiff included a transcript of the Resolve caller's voice message. That message stated that the speaker was calling "on behalf of Fannie Mae," and that "[h]elp from Fannie Mae is available but you must return our call." (Compl. ¶ 14). These facts certainly rise to the standard of "a showing, rather than a blanket assertion, of entitlement to relief that rises above the speculative level.

*Hartley-Culp v. Green Tree Servicing, LLC*, 52 F. Supp. 3d 700, 703-04 (M.D. Pa. 2014). Like the Plaintiff in *Hartley-Culp*, the Plaintiff described the calls, including specific promotion of Response Now. *See* ECF No. 1 at ¶¶ 16-19. Courts in this district have readily denied similar motion to dismiss for purported lack of various liability. *Abramson v. Agentra*, 2018 U.S. Dist. LEXIS 212285 * 12 (W.D. Pa, December 18, 2018) ("Abramson has sufficiently alleged that

Agentra can be held liable for the conduct of the telemarketing companies with which it contracts"). As Judge Wolson held denying a similar motion:

> SAG has established that it outsources its telemarketing and authorizes those third-parties to enter into contract on its behalf. Those facts, however, could give rise to a plausible claim of vicarious liability, regardless of the label attached to the relationship that SAG has with its third-party vendor. *See Restatement (Third) of Agency § 2.01* (agent acts **[*4]** with actual authority when, "at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act"). That conclusion is consistent with the Third Circuit's mandate that courts construes the TCPA broadly to effect its purpose. *See Gager v. Dell Fin. Svcs., LLC, 828 F.3d 265, 271 (3d Cir. 2013)*.

*Newell v. Strategic Admin. Grp.*, No. 2:20-cv-00967-JDW, 2020 U.S. Dist. LEXIS 261006, at **3-4 (E.D. Pa. May 6, 2020).

At a minimum, through its conduct, in hiring the co-defendants to conduct the telemarketing to Plaintiff and members of the proposed class, Defendant impliedly conveyed to these agents that their telemarketing efforts were authorized by Defendant. *See e.g.*, *Clough v. Plymouth Rock Mgmt. Co. of N.J.*, Civil Action No. 21-19343 (JXN) (JBC), 2023 U.S. Dist. LEXIS 231400, at *10-11 (D.N.J. Dec. 29, 2023) (allegations which substantiate an outsourcing arrangement to promote principal's goods or services support claim for vicarious liability).

As the one court observed, allegations that a third party reasonably believes an agent had authority to act and that belief is traceable to the principal's manifestation support a claim of apparent authority:

11

> Plaintiff sufficiently pleads Century 21's vicarious liability predicated on apparent authority and ratification theories based on the same allegations supporting an actual authority theory, including that realtors identified themselves as calling from "Century 21" during calls, that Century 21 provided instruction regarding call content and frequency, and that Century 21 facilitated realtors' access to lead lists and dialers to call them with (*i.e.*, Century 21 knew or should have known of realtors' TCPA violations and accepted the benefits of their calls anyway).

*Valdes v. Century 21 Real Estate, LLC*, No. 2:19-05411, 2019 U.S. Dist. LEXIS 182616, at *11-12 (D.N.J. Oct. 21, 2019)

Mr. Abramson has also stated a claim of vicarious liability under a ratification theory. "[W]hen a person ratifies another's act, the legal consequence is that the person's legal relations are affected as they would have been had the actor been an agent acting with actual authority at the time of the act." *Keim v. ADF Midatlantic, LLC,* No. 12-80577-CIV-MARRA, 2015 U.S. Dist. LEXIS 159070, at *27 (S.D. Fla. Nov. 9, 2015) (Seller's acceptance of benefits of telemarketer's TCPA violations constitutes ratification, precluding dismissal.).

Defendants' argument improperly faults Plaintiff for not pleading the precise contours of contractual relationships and control that exist exclusively within Defendants' possession. Rule 8 imposes no such burden. Discovery—not Rule 12(b)(6)—is the mechanism by which Plaintiff will obtain the agreements, communications, instructions, and supervisory materials governing Defendants' telemarketing campaign.

Taken together, the Complaint alleges far more than a bare assertion that Response Now is liable for another entity's conduct. Plaintiff alleges that Response Now admitted it marketed

12

through PNHC; entered into a written agreement governing outbound telemarketing; compensated PNHC for qualifying sales; contemplated the use of downstream call centers; accepted the leads generated through the challenged calls; transferred Plaintiff into its own sales process; processed Plaintiff's purchase; charged Plaintiff's credit card; and delivered the medical alert device purchased as a result of the telemarketing campaign. ECF No. 1 ¶¶ 20–45.

Those factual allegations plausibly support theories of actual authority, apparent authority, and ratification. Whether discovery ultimately establishes those agency relationships is a question for summary judgment or trial—not a motion to dismiss. Because Plaintiff has alleged sufficient facts to permit the reasonable inference that Response Now is vicariously liable for the challenged calls, Defendants' motion should be denied.

## IV. THE COMPLAINT PLAUSIBLY ALLEGES USE OF A PRERECORDED OR ARTIFICIAL VOICE.

In suggesting that the Plaintiff fails to allege the use of an artificial or prerecorded voice, the Defendant misconstrues the pleading standard under Rule 8(a)(2). The Defendant also ignores the lion's share of the Plaintiff's allegations.

To start, allegations of the use of an artificial or prerecorded voice are allegations of fact, not legal conclusions. *See, e.g.*, *Vaccaro v. CVS Parm., Inc.*, No. 13-CV-174-IEG (RBB), 2013 WL 3776927, at *2 (S.D. Cal. July 16, 2013) (denying motion to dismiss TCPA claims and noting "[t]hat the calls were made using an artificial or prerecorded voice is a factual allegation rather

than a legal conclusion."); *accord Bonoan v. Adobe, Inc.*, 19-cv-01068-RS (SK), 2019 WL 5690631, at *1 (N.D. Cal. Oct. 29, 2019) ("The term 'artificial or prerecorded voice' does not call for a legal conclusion . . . . Determining whether a voice is artificial or prerecorded does not require legal analysis.").

So while "even a legal conclusion couched as a factual allegation is insufficient on its own because, however disguised, it remains a legal conclusion[,]" "[f]actual allegations do not cease to be factual even if they quote a statute's language." *Vaccaro*, 2013 WL 3776927, at *2 ("For instance, allegation of a telephone call remains factual even though the word 'call' is found in the TCPA."); *see also Mata v. Veros Credit, LLC*, No. SA CV 16-8-DOC (JCGx), 2017 WL 2644633, at *4 (C.D. Cal. Jan. 20, 2017) ("That the calls were made using an artificial or prerecorded voice is a factual allegation rather than a legal conclusion."). Plaintiff expressly alleges that Defendants delivered messages that "were clearly artificial or prerecorded." ECF No. 1 ¶ 18.  These allegations are more than sufficient. *See, e.g.*, *Rahn v. Bank of Am., N.A.*, No. 1:15-cv-4485-ODE-JSA, 2016 WL 7325657, at *4 (N.D. Ga. June 26, 2016) ("When one receives a call, it is a clear-cut fact, easily discernible to any lay person, whether or not the recipient is speaking to a live human being, or is instead being subjected to a prerecorded message. . . . Thus, that Plaintiff states he received calls containing 'prerecordings' is a factual allegation for purposes of the pleading standards, and not a bare legal conclusion.").

The Complaint then reproduces a representative portion of the identical message played during the calls. *Id.* ¶ 19. Plaintiff further alleges that multiple calls used the same prerecorded

14

message and followed the same transfer process into Response Now's sales channel. *Id.* ¶ 26. Taken together, these allegations are more than sufficient to plead the use of an artificial or prerecorded voice. *See, e.g.*, *Taylor v. Kin Ins., Inc.*, No. 25-cv-213, 2025 WL 1651524, at *2 (N.D. Ill. June 10, 2025) ("Defendant points out that Plaintiff omits certain details, such as full transcripts of the voicemails received, the total number of calls received, and whether Plaintiff answered or otherwise spoke to anyone on the calls. While Plaintiff could have alleged these additional facts, they are not necessary to plausibly state a TCPA claim."); *Van Baalen v. Mut. of Omaha Ins. Co.*, 729 F. Supp. 3d 1239, 1249 (D.N.M. 2024) ("Plaintiff's allegations sufficiently draw the inference that a prerecorded voice was used. He states that 'on several occasion' the Jane Doe callers 'left a generic, standardized prerecorded message in Plaintiff's phone's voice-mail,' which is sufficient to support an inference that Plaintiff received identical, prerecorded calls."); *Cabral v. Penske Truck Leasing Co. LP*, No. 1:23-cv-01316, 2024 WL 1916701, at *6 (M.D. Pa. May 1, 2024) ("Unlike cases dismissing TCPA claims because the plaintiff, 'has not pled any facts relative to an automatic telephone dialing system or to an artificial or prerecorded voice,' Mr. Cabral has made at least some factual statements supporting his allegation that Penske contacted him using a prerecorded message. . . . The Court therefore concludes that, at this early stage of the litigation, Mr. Cabral's allegations are sufficient for his TCPA claim to survive."); *Dudley v. Vision Solar, LLC*, No. 21-659, 2021 WL 3077557, at *3 (E.D. Pa. July 21, 2021) ("The Complaint therefore does not merely repeat the language of the TCPA, but instead provides a description, albeit minimal, of the calls' content that extends beyond the language of the statute. Drawing all

15

reasonable inferences in Plaintiffs' favor, we find the description of the calls' options menu and 'computerized' voice sufficient to plausibly allege that the calls used an artificial or prerecorded voice."); *Greene v. Select Funding, LLC*, No. 2:20-cv-07333-RGK-KS, 2021 WL 4926495, at \*4 (C.D. Cal. Feb. 5, 2021) ("Plaintiff alleges that he knew that caller he spoke with on April 10 was a pre-recorded message based on the speaker's 'content, tone and inflection,' 'the generic content of the voice message,' and the speaker's cadence. These allegations survive a motion to dismiss.").

Defendant's argument ultimately asks the Court to require Plaintiff to prove, rather than plead, that the calls used an artificial or prerecorded voice. Rule 8 imposes no such requirement. Plaintiff alleges that Defendants delivered calls containing a message that "was clearly artificial or prerecorded," reproduces a representative portion of that message, alleges that multiple calls played the same message, and alleges that each call followed the same process of transferring Plaintiff into Response Now's sales channel. ECF No. 1 ¶¶ 18–19, 26. Those factual allegations readily permit the reasonable inference that Defendants used an artificial or prerecorded voice within the meaning of the TCPA.

At bottom, Defendant identifies no authority requiring a plaintiff to plead full transcripts, audio recordings, technical details regarding the dialing platform, or other evidentiary matter at the pleading stage. Because the Complaint alleges specific facts describing the prerecorded nature and content of the calls—not merely a formulaic recitation of the statutory language—Plaintiff has plausibly alleged the use of an artificial or prerecorded voice. Defendant's motion should therefore be denied.

## V.   PLAINTIFF HAS ADEQUATELY PLED HIS REQUEST FOR INJUNCTIVE RELIEF.

At the pleading stage, Defendant's effort to attack injunctive relief fails for a straightforward reason: this is a statutory injunction. Where a statute bans certain conduct or establishes certain rights, a court may grant an injunction to enforce the statute, and "where [the] plaintiff sufficiently alleges a claim for a statutory violation, that is all that is required to request injunctive relief in a complaint." *Gutierrez v. Fla. Advert. & Mktg. Corp.,* 387 F. Supp. 3d 1410, 1411 (S.D. Fla. 2019) (*quoting Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1098 (11th Cir. 2004)); *see also Christian Cty. Clerk v. Mortg. Elec. Registration Sys.,* 515 F. App'x 451, 458 (6th Cir. 2013) (*citing Klay*).

Here, Plaintiff has sufficiently alleged TCPA violations—he alleges he received a pre-recorded call, he had no relationship with Defendants, and Defendants nonetheless sent him violative calls (ECF No. 1.) That is enough at this stage to plead a basis for injunctive relief aimed at curbing the violative telemarketing conduct Defendant directed toward him. Defendants also cannot defeat injunctive relief by by claiming there is no "imminent" harm because the last text was months ago. Injunctive relief addresses the ongoing risk posed by a telemarketer's policies and practices—particularly where, as alleged, Defendant continued messaging after a stop/cease request, which supports a plausible risk of recurrence unless enjoined. *See Griffith v. ContextMedia, Inc.,* 235 F. Supp. 3d 1032, 1033–35 (N.D. Ill. 2016) (holding that allegations

that defendants kept contacting plaintiff after being told to stop were sufficient to allow development of the factual record as to injunctive relief).

Nor can Defendant moot or preclude classwide injunctive relief by ceasing contact with the named plaintiff (or claiming it did). Courts recognize that where the alleged injury is by nature temporary, defendants cannot evade prospective injunctive relief simply by stopping the challenged conduct as to plaintiffs who step forward while remaining free to resume it later. *Snyder v. Ocwen Loan Servicing, LLC*, 258 F. Supp. 3d 893, 901 (N.D. Ill. 2017) (rejecting the argument that a TCPA plaintiff cannot pursue injunctive relief for a class once he stops receiving calls; concluding a defendant's voluntary cessation is insufficient to moot injunctive relief where it remains free to resume conduct). The Supreme Court likewise recognizes that transitory injuries can remain justiciable in class settings so defendants cannot "evade" prospective relief by timing cessation; the critical inquiry is that the named plaintiff had a live claim when suit was filed. *Gerstein v. Pugh,* 420 U.S. 103, 110 n.11 (1975). Dismissal of equitable relief at this preliminary stage would therefore be premature.

## VI.    THE COURT SHOULD NOT STRIKE THE CLASS ALLEGATIONS.

Defendants devote little more than two pages to requesting that the Court strike Plaintiff's class allegations. They cite no authority applying Rule 23 to the facts alleged here. Significantly, because "the TCPA is 'a consumer protection statute which is remedial in nature,' this Court must interpret the statute broadly" and certainly not allow it to be turned on its head and weaponized against consumers." *Heard v. Nationstar Mortg. LLC*, No. 16-cv-00694- MHH, 2018 WL

4028116, at *5 (N.D. Ala. Aug. 23, 2018). Indeed, the Third Circuit has held, "because the TCPA is a remedial statute, it should be construed to benefit consumers." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013).

"Courts should exercise caution when striking class action allegations based solely on the pleadings, because class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-CV-846, 2014 U.S. Dist. LEXIS 63122, 2014 WL 1814076, at *2 (S.D. Ohio May 7, 2014) (ultimately finding plaintiff in a TCPA case improperly pled a fail-safe class, but granting plaintiff leave to amend its pleadings to remove reference to consent, which is not included here).

In essence, prior to any discovery, the Defendants ask this Court to hold as a matter of law that a TCPA class is not ascertainable. As the Fourth Circuit explained:

> In enacting the law, Congress sought to deter an activity that, while pernicious and disruptive, does not trigger extensive liability in any single case. Since few individuals would have an incentive to bring suit, no matter how frustrated they were with the intrusion on their privacy, the TCPA opted for a model that allows for resolution of issues without extensive individual complications.

*Krakauer*, 925 F.3d at 656 (noting that "the TCPA clearly supports class-wide resolution"). Indeed, courts around the country have certified numerous class actions based on violations of the TCPA. At bottom, given that courts regularly certify TCPA class actions, Defendant's

19

suggestion that the Plaintiff cannot meet the elements necessary to certify his proposed TCPA class is not credible.

A class is not fail-safe if "[m]embership … can be determined without reaching any legal conclusions to determine whether someone is in the class, one simply needs to answer questions … determined by objective criteria." *Panacci v. A1 Solar Power, Inc.*, No. 15-cv-00532-JCS, 2015 WL 3750112, at *8 (N.D. Cal. June 15, 2015) (internal annotations omitted).  Contrary to what Defendant argues, to determine class membership in this case the Court will ask the following series of objective, factual questions:

- Did Defendants make pre-recorded calls?

- Is Response Now vicarious liable for the acts of the co-defendants?

- Were those numbers "residential"?

- Do Defendants claim to have obtained consent to call them in the same manner Defendant claims to have obtained consent to call Plaintiff?

*See id*. at *8-9 (finding that the plaintiff's proposed Class were not fail safe because "one simply needs to answer questions such as whether the person received a certain number of phone calls from Defendants within a certain timeframe").

In rejecting a similar argument previously in a TCPA case, the Middle District of Pennsylvania rejected an identical argument over the same class definition proposed here in

20

*Jackson v. Meadowbrook Fin. Mortg. Bankers Corp.,* No. 4:22-CV-01659, 2023 U.S. Dist.

LEXIS 41211, at *7 (M.D. Pa. Mar. 10, 2023) (footnotes omitted):

> Meadowbrook directs this Court to a 2015 ruling by the Honorable Stewart R. Dalzell of the United States District Court for the Eastern District of Pennsylvania in *Zarichny v. Complete Payment Recovery Services, Inc.* There, the plaintiff brought a putative class action under the TCPA on behalf of herself and similarly situated individuals who received one or more calls on their personal cell phones from the defendants using an automatic telephone dialing system without prior consent. Judge Dalzell concluded that the class was an impermissible fail-safe class because "there is no way to provide notice to that putative class without the [*8] sort of extensive fact-finding that class actions should avoid," and "at the conclusion of the litigation, should [the defendant] prevail against [the plaintiff], any other putative class recipient would be free to litigate the same claim against [the defendant]."
>
> Nine months after his ruling in *Zarichny*, Judge Dalzell confronted a similar question—but reached a different result. In *Abella v. Student Aid Center, Inc.*, as in *Zarichny*, the defendant moved to strike the class allegations relating to violations of the TCPA, arguing that "the class definition proposed by the plaintiff was an impermissible 'fail-safe' class."**37** But Judge Dalzell concluded that the proposed class in *Abella* did not "meet[] the definition of a fail-safe class," highlighting two distinctions between the proposed classes in *Abella* and *Zarichny*: (1) unlike the proposed class in *Zarichny*, the *Abella* class "makes no reference to [the defendant's] use of an automatic telephone dialing system[,] . . . which is a required element for a claim under the TCPA"; and (2) the plaintiff in *Abella* did not "rely[] on potential class members' word when determining whether they gave [the defendant] consent to send them text messages," relying instead [*9] on the defendant's "internal records that detail whether it received consent to text certain phone numbers."
>
> Since 2015, district courts within this circuit have consistently emphasized the latter distinction Judge Dalzell highlighted in *Abella*. For example, in *Johnson v. Ally Financial Inc.*, my colleague, the Honorable Christopher C. Conner, declined to strike class allegations concerning the following proposed class: "all persons in the United States who received a call from [the defendant] with the aid of an automatic telephone dialing system when [the defendant's] business records do not indicate it received prior consent."**39** Judge Conner held that this proposed class was not a "facially uncertifiable" fail-safe class because it was properly defined with

21

> reference to objective, factual criteria—i.e., the defendant's "business records [that] may (with discovery) reveal an ascertainable []class"—that fall "outside of the legal requirements of the [TCPA]."…
>
> Here, Jackson argues that like the plaintiffs in *Abella, Johnson, O.P. Schuman*, and *Shelton*, he elided the fail-safe concern present in *Zarichny* by making the "conscious decision to not include language about individuals who have not provided their 'prior express written consent' in the class definition." The Court agrees. The issue of whether Meadowbrook's "conduct constitutes a violation of the TCPA" is arguably a question of law and fact common to Jackson and the other proposed class members. But that alone does not render the proposed class fail-safe. The question here is whether Jackson's proposed class is defined with reference to objective, factual criteria that fall "outside of the legal requirements of the [TCPA]." Consistent with prior district court rulings in this circuit, the Court finds that it may well be.

This Court should hold the same that it did in *Meadowbrook* and deny the motion.

As to the issues of consent, it is true that some courts have previously struck class allegations in TCPA cases where the lack of consent was pled as part of the class definition. It is also true that consent under the TCPA at the time of the alleged calls could have been tendered to a third party. However, it is important to note that the cases cited by the Defendant all had class allegations struck at the pleadings stage for precisely that reason: the class definition included some variation of the language that required each class member have not provided their consent.

Defendants' argument focuses on a potential affirmative defense of consent or established business relationship (of which they've produced no evidence to support) to assert that the action in its entirety is incapable of being maintained as a class action. In rejecting the same argument previously in a TCPA case, another Court held:

> The Court finds that the defendant's motion to strike the class allegations is premature before plaintiff can develop the factual record through discovery. Loan Depot's citation of consent as a potential affirmative defense is insufficient to

22

warrant striking the putative class solely on the pleadings. The motion to strike class allegations will, therefore, be denied.

*Rosenberg v. LoanDepot.com LLC,* 435 F. Supp. 3d 308, 318 (D. Mass. 2020).

Even though Mr. Abramson does not believe that the Defendants obtained the appropriate prior express written consent for its calls with the called party because it was a current customer or established business relationship (as the calls were designed to solicit new business), the Plaintiff made a conscious decision to not include language about individuals who have not provided their "prior express written consent" in the class definition, as other federal courts *have found that* to be an impermissible fail-safe class in TCPA cases. In *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-cv-846, 2014 WL 1814076, at *8-9 (S.D. Ohio May 7, 2014), a court held that a TCPA plaintiff needed to amend his class definition because he included that language in a TCPA proposed class definition:

> Each of the Plaintiff's proposed classes is defined to include only those individuals who did not expressly consent to the receipt of the defendant's phone calls made with the use of an ATDS. Because the TCPA prohibits calls to cellular telephones using ATDSs unless prior express consent has been given, defining the class to include anyone who received such a call without prior express consent means that only those potential members who would prevail on this liability issue would be members of the class…However, if the Plaintiffs are unsuccessful in meeting their burden of proof, the class does not exist and the class is not bound by the judgment in favor of the Defendant.  [*24] This is the definition of a prohibited fail-safe class.

Other courts agree. *See e.g. Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536 (E.D. Mich. 2015). Here, the Plaintiff avoided that potentially fatal flaw in drafting.

23

Nor does the determination of the consent issue necessitate thousands of individual mini-trials as the Defendant claims. Courts do not see consent issues as problematic from a class certification perspective, particularly when there are uniform issues with the offered consent evidence. *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 972 (N.D. Cal. 2019), *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012), *Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 504 (S.D.N.Y. 2014). Second, the class definition is not overly broad because it deals with the consent issue through an analysis of the Defendant's very own records. The Plaintiff seeks to represent a class defined in part by information readily available in Defendants' internal records: whether or not they received a call from the Defendants and whether or not they provided their number to the Defendants beforehand. Provided that Defendants has records of whom it sent messages, and a record of whether or not they simply cold-called that person or instead had an inquiry or written permission, they will not have to take a putative class member's say-so that he received a call or that he didn't consent. Thus, the class is not overly broad, but rather will be accurately ascertained and notified long before the jury returns a verdict.

## VII.    A MORE DEFINITE STATEMENT IS UNWARRANTED.

Finally, Defendants alternatively seek a more definite statement under Rule 12€. Rule 12€ is reserved for pleadings that are so vague or ambiguous that a responsive pleading cannot reasonably be prepared. That standard plainly is not satisfied here. The Complaint identifies

Plaintiff's telephone numbers, the dates of the challenged calls, the prerecorded message delivered, the entities allegedly responsible, the resulting transfer to Response Now, the contractual relationship among Defendants, and the statutory basis for relief. ECF No. 1 ¶¶ 12–45. Indeed, Defendants' own Motion demonstrates that they understand every allegation. They devote separate sections challenging prerecorded voice allegations, agency, standing, class allegations, and the factual sufficiency of Plaintiff's claims. Because the Complaint plainly provides fair notice of the claims asserted, Rule 12(e) affords Defendants no relief.

## **CONCLUSION**

For the foregoing reasons, Plaintiff has more than plausibly alleged that Defendants violated the Telephone Consumer Protection Act. The Complaint identifies each Defendant's role in the coordinated telemarketing campaign, alleges facts supporting direct and vicarious liability, describes the prerecorded messages Plaintiff received, and provides Defendants with fair notice of every claim asserted. Rather than identifying pleading deficiencies, Defendants' Motion repeatedly asks the Court to disregard well-pleaded factual allegations, draw inferences in Defendants' favor, and resolve factual disputes that must await discovery. Because the Complaint satisfies Rule 8 and states plausible claims for relief, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss in its entirety, deny Defendants' alternative request for a more definite statement, and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

  /s/ *Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 25, 2026, I caused the foregoing to be electronically filed with the Clerk of the United States District Court for the Western District of Pennsylvania using the CM/ECF system, which will send notification of such filing to all counsel of record.

  /s/ *Anthony I. Paronich*
Anthony I. Paronich