**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| STEWART ABRAMSON, individually and on behalf of a class of all persons and entities similarly situated,<br><br>        Plaintiff<br><br>vs.<br><br>RESPONSE NOW MEDICAL ALERT SYSTEMS, PNHC, LLC AND SALES STREAK, LLC<br><br>        Defendants. | Case No. 26-cv-582 |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS'
PNHC, LLC AND SALES STREAK, LLC MOTION TO DISMISS**

**INTRODUCTION**

Moving Defendants Sales Streak, LLC and PNHC, LLC ask the Court to dismiss a Complaint that identifies each entity's role in a coordinated prerecorded telemarketing campaign, alleges the dates and content of the challenged calls, and describes the factual basis connecting each Moving Defendant to those calls. ECF No. 1 ¶¶ 16–45.

The Complaint alleges that Sales Streak admitted responsibility for at least two of the prerecorded telemarketing calls Plaintiff received. *Id.* ¶ 24. It further alleges that Sales Streak coordinated its telemarketing activities with PNHC, that the entities participated in the same telemarketing campaign, and that the calls used the same prerecorded message and transfer process. *Id.* ¶¶ 24–26. The Complaint separately alleges that PNHC performed outbound telemarketing services promoting the products at issue and was contractually authorized to use additional call centers and subcontractors. *Id.* ¶¶ 35–40.

These allegations give Sales Streak and PNHC fair notice of the conduct attributed to each of them. The Amended Motion nevertheless characterizes the allegations as conclusory and asks the Court to resolve factual questions concerning the Moving Defendants' respective roles before discovery has occurred. Because the Complaint plausibly alleges that Sales Streak and PNHC participated in the challenged telemarketing campaign and delivered calls containing an artificial or prerecorded voice, the Amended Motion should be denied.

1

## ARGUMENT

### I.    THE COMPLAINT DOES NOT ENGAGE IN IMPROPER GROUP PLEADING.

Moving Defendants' principal argument is that the Complaint impermissibly refers collectively to "Defendants." The argument ignores the Complaint as a whole.

As an initial matter, Defendants' "group pleading" argument misstates Rule 8. Rule 8 requires a "short and plain statement" sufficient to give each defendant fair notice of the claim and the grounds on which it rests; it "does not require detailed factual allegations." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Nor may a complaint be dismissed merely because the plaintiff's proof may later appear unlikely. *Id.* at 231. The question is whether the factual allegations, taken as true, plausibly suggest entitlement to relief and raise a reasonable expectation that discovery will reveal evidence supporting the claim. *Id.* at 234.

That standard is satisfied here. The Complaint does not rely exclusively upon collective references to "Defendants." It identifies conduct attributable to Sales Streak and PNHC individually and alleges that they coordinated their conduct as part of the same telemarketing campaign. Rule 8 requires reasonable notice of the claims against each defendant, not an evidentiary account of every participant's precise conduct before discovery.

The Complaint separately identifies the roles of Sales Streak and PNHC. It alleges that Muhammad Abbas Hussain, acting on behalf of Sales Streak, admitted that Sales Streak was responsible for at least two of the prerecorded telemarketing calls Plaintiff received. ECF No. 1 ¶

2

24. It further alleges that Sales Streak coordinated its telemarketing activities with PNHC and Umar Jalil Malik, and that Sales Streak and PNHC participated in a unified telemarketing campaign using the same prerecorded message and transfer process. *Id.* ¶¶ 25–26. The Complaint also alleges that PNHC performed outbound telemarketing services and was authorized to utilize additional call centers and subcontractors. *Id.* ¶¶ 35–40.

These are not generalized accusations. They identify Sales Streak's admitted responsibility for particular calls, allege coordination between Sales Streak and PNHC, and describe PNHC's role in the outbound telemarketing arrangement. The fact that the Complaint also alleges that the Moving Defendants acted jointly does not erase the allegations directed to each entity.

The Complaint therefore gives both Sales Streak and PNHC fair notice of the factual basis for the claims against them. The Moving Defendants may dispute those allegations, but the Court must accept them as true, draw all reasonable inferences in Plaintiff's favor, and evaluate the Complaint as a whole. See *Phillips*, 515 F.3d at 231, 234. The group-pleading argument should be rejected.

3

## II.    THE COMPLAINT ADEQUATELY ALLEGES WHICH DEFENDANT WAS RESPONSIBLE FOR THE CHALLENGED CALLS.

Moving Defendants next argue that the Complaint fails to identify which entity was responsible for the challenged calls. But the Complaint alleges that a representative of Sales Streak admitted that Sales Streak was responsible for at least two of the prerecorded telemarketing calls Plaintiff received. ECF No. 1 ¶ 24. It further alleges that Sales Streak coordinated its telemarketing activities with PNHC and that the entities participated in a unified campaign using the same prerecorded message and transfer process. *Id.* ¶¶ 25–26.

The Complaint also alleges facts connecting PNHC to the campaign, including that PNHC performed outbound telemarketing services promoting the products at issue and was authorized to use additional call centers and subcontractors. *Id.* ¶¶ 35–40. These allegations plausibly identify the Moving Defendants' respective roles. Rule 8 does not require Plaintiff, before discovery, to identify which employee physically pressed a button or initiated each individual transmission. The request for dismissal on this basis should be denied.

4

### III.   THE COMPLAINT PLAUSIBLY ALLEGES USE OF A PRERECORDED OR ARTIFICIAL VOICE.

In arguing that Plaintiff fails to allege the use of an artificial or prerecorded voice, the Moving Defendants misconstrue the pleading standard under Rule 8(a)(2) and disregard the Complaint's factual allegations.

To start, allegations of the use of an artificial or prerecorded voice are allegations of fact, not legal conclusions. *See, e.g.*, *Vaccaro v. CVS Parm., Inc.*, No. 13-CV-174-IEG (RBB), 2013 WL 3776927, at *2 (S.D. Cal. July 16, 2013) (denying motion to dismiss TCPA claims and noting "[t]hat the calls were made using an artificial or prerecorded voice is a factual allegation rather than a legal conclusion."); *accord Bonoan v. Adobe, Inc.*, 19-cv-01068-RS (SK), 2019 WL 5690631, at *1 (N.D. Cal. Oct. 29, 2019) ("The term 'artificial or prerecorded voice' does not call for a legal conclusion . . . . Determining whether a voice is artificial or prerecorded does not require legal analysis.").

So while "even a legal conclusion couched as a factual allegation is insufficient on its own because, however disguised, it remains a legal conclusion[,]" "[f]actual allegations do not cease to be factual even if they quote a statute's language." *Vaccaro*, 2013 WL 3776927, at *2 ("For instance, allegation of a telephone call remains factual even though the word 'call' is found in the TCPA."); *see also Mata v. Veros Credit, LLC*, No. SA CV 16-8-DOC (JCGx), 2017 WL 2644633, at *4 (C.D. Cal. Jan. 20, 2017) ("That the calls were made using an artificial or prerecorded voice is a factual allegation rather than a legal conclusion."). Plaintiff expressly alleges that Defendants

5

delivered messages that "were clearly artificial or prerecorded." ECF No. 1 ¶ 18.  These allegations are more than sufficient. *See, e.g.*, *Rahn v. Bank of Am., N.A.*, No. 1:15-cv-4485-ODE-JSA, 2016 WL 7325657, at *4 (N.D. Ga. June 26, 2016) ("When one receives a call, it is a clear-cut fact, easily discernible to any lay person, whether or not the recipient is speaking to a live human being, or is instead being subjected to a prerecorded message. . . . Thus, that Plaintiff states he received calls containing 'prerecordings' is a factual allegation for purposes of the pleading standards, and not a bare legal conclusion.").

The Complaint then reproduces a representative portion of the identical message played during the calls. *Id.* ¶ 19. Taken together, these allegations are more than sufficient to plead the use of an artificial or prerecorded voice. *See, e.g.*, *Taylor v. Kin Ins., Inc.*, No. 25-cv-213, 2025 WL 1651524, at *2 (N.D. Ill. June 10, 2025) ("Defendant points out that Plaintiff omits certain details, such as full transcripts of the voicemails received, the total number of calls received, and whether Plaintiff answered or otherwise spoke to anyone on the calls. While Plaintiff could have alleged these additional facts, they are not necessary to plausibly state a TCPA claim."); *Van Baalen v. Mut. of Omaha Ins. Co.*, 729 F. Supp. 3d 1239, 1249 (D.N.M. 2024) ("Plaintiff's allegations sufficiently draw the inference that a prerecorded voice was used. He states that 'on several occasion' the Jane Doe callers 'left a generic, standardized prerecorded message in Plaintiff's phone's voice-mail,' which is sufficient to support an inference that Plaintiff received identical, prerecorded calls."); *Cabral v. Penske Truck Leasing Co. LP*, No. 1:23-cv-01316, 2024 WL 1916701, at *6 (M.D. Pa. May 1, 2024) ("Unlike cases dismissing TCPA claims because the

6

plaintiff, 'has not pled any facts relative to an automatic telephone dialing system or to an artificial or prerecorded voice,' Mr. Cabral has made at least some factual statements supporting his allegation that Penske contacted him using a prerecorded message. . . . The Court therefore concludes that, at this early stage of the litigation, Mr. Cabral's allegations are sufficient for his TCPA claim to survive."); *Dudley v. Vision Solar, LLC*, No. 21-659, 2021 WL 3077557, at *3 (E.D. Pa. July 21, 2021) ("The Complaint therefore does not merely repeat the language of the TCPA, but instead provides a description, albeit minimal, of the calls' content that extends beyond the language of the statute. Drawing all reasonable inferences in Plaintiffs' favor, we find the description of the calls' options menu and 'computerized' voice sufficient to plausibly allege that the calls used an artificial or prerecorded voice."); *Greene v. Select Funding*, *LLC*, No. 2:20-cv-07333-RGK-KS, 2021 WL 4926495, at *4 (C.D. Cal. Feb. 5, 2021) ("Plaintiff alleges that he knew that caller he spoke with on April 10 was a pre-recorded message based on the speaker's 'content, tone and inflection,' 'the generic content of the voice message,' and the speaker's cadence. These allegations survive a motion to dismiss.").

Moving Defendants' argument ultimately asks the Court to require Plaintiff to prove, rather than plead, that the calls used an artificial or prerecorded voice. Rule 8 imposes no such requirement. Plaintiff alleges that Defendants delivered calls containing a message that "was clearly artificial or prerecorded," reproduces a representative portion of that message, alleges that multiple calls played the same message, and alleges that the same message was used during the

calls. ECF No. 1 ¶¶ 18–19, 26. Those factual allegations readily permit the reasonable inference that Defendants used an artificial or prerecorded voice within the meaning of the TCPA.

At bottom, Defendant identifies no authority requiring a plaintiff to plead full transcripts, audio recordings, technical details regarding the dialing platform, or other evidentiary matter at the pleading stage. Because the Complaint alleges specific facts describing the prerecorded nature and content of the calls—not merely a formulaic recitation of the statutory language—Plaintiff has plausibly alleged the use of an artificial or prerecorded voice. Defendant's motion should therefore be denied.

## IV.    PLAINTIFF HAS ADEQUATELY PLED HIS REQUEST FOR INJUNCTIVE RELIEF.

At the pleading stage, Defendant's effort to attack injunctive relief fails for a straightforward reason: this is a statutory injunction. Where a statute bans certain conduct or establishes certain rights, a court may grant an injunction to enforce the statute, and "where [the] plaintiff sufficiently alleges a claim for a statutory violation, that is all that is required to request injunctive relief in a complaint." *Gutierrez v. Fla. Advert. & Mktg. Corp.,* 387 F. Supp. 3d 1410, 1411 (S.D. Fla. 2019) (*quoting Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1098 (11th Cir. 2004)); *see also Christian Cty. Clerk v. Mortg. Elec. Registration Sys.,* 515 F. App'x 451, 458 (6th Cir. 2013) (*citing Klay*).

Here, Plaintiff has sufficiently alleged TCPA violations—he alleges he received a pre-recorded call, he had no relationship with Defendants, and Defendants nonetheless sent him

8

violative calls (ECF No. 1.) That is enough at this stage to plead a basis for injunctive relief aimed at curbing the violative telemarketing conduct the Moving Defendants directed toward him. Defendants also cannot defeat injunctive relief by claiming there is no "imminent" harm because the last contact was recent.

Nor can Moving Defendants moot or preclude classwide injunctive relief by ceasing contact with the named plaintiff (or claiming it did). Courts recognize that where the alleged injury is by nature temporary, defendants cannot evade prospective injunctive relief simply by stopping the challenged conduct as to plaintiffs who step forward while remaining free to resume it later. *Snyder v. Ocwen Loan Servicing, LLC*, 258 F. Supp. 3d 893, 901 (N.D. Ill. 2017) (rejecting the argument that a TCPA plaintiff cannot pursue injunctive relief for a class once he stops receiving calls; concluding a defendant's voluntary cessation is insufficient to moot injunctive relief where it remains free to resume conduct). The Supreme Court likewise recognizes that transitory injuries can remain justiciable in class settings so defendants cannot "evade" prospective relief by timing cessation; the critical inquiry is that the named plaintiff had a live claim when suit was filed. *Gerstein v. Pugh,* 420 U.S. 103, 110 n.11 (1975). Dismissal of equitable relief at this preliminary stage would therefore be premature.

## V.     THE COURT SHOULD NOT STRIKE THE CLASS ALLEGATIONS.

Moving Defendants devote little more than two pages to requesting that the Court strike Plaintiff's class allegations. They do not demonstrate that the proposed class is facially uncertifiable before discovery. Significantly, because "the TCPA is 'a consumer protection statute

which is remedial in nature,' this Court must interpret the statute broadly" and certainly not allow it to be turned on its head and weaponized against consumers." *Heard v. Nationstar Mortg. LLC*, No. 16-cv-00694- MHH, 2018 WL 4028116, at *5 (N.D. Ala. Aug. 23, 2018). Indeed, the Third Circuit has held, "because the TCPA is a remedial statute, it should be construed to benefit consumers."

*Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013).

"Courts should exercise caution when striking class action allegations based solely on the pleadings, because class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Sauter v. CVS Pharmacy, Inc*., No. 2:13-CV-846, 2014 U.S. Dist. LEXIS 63122, 2014 WL 1814076, at *2 (S.D. Ohio May 7, 2014) (ultimately finding plaintiff in a TCPA case improperly pled a fail-safe class, but granting plaintiff leave to amend its pleadings to remove reference to consent, which is not included here).

In essence, prior to any discovery, the Defendants ask this Court to hold as a matter of law that a TCPA class is not ascertainable. As the Fourth Circuit explained:

> In enacting the law, Congress sought to deter an activity that, while pernicious and disruptive, does not trigger extensive liability in any single case. Since few individuals would have an incentive to bring suit, no matter how frustrated they were with the intrusion on their privacy, the TCPA opted for a model that allows for resolution of issues without extensive individual complications.

*Krakauer*, 925 F.3d at 656 (noting that "the TCPA clearly supports class-wide resolution"). Indeed, courts around the country have certified numerous class actions based on violations of the TCPA. At bottom, given that courts regularly certify TCPA class actions, Defendant's

10

suggestion that the Plaintiff cannot meet the elements necessary to certify his proposed TCPA class is not credible.

A class is not fail-safe if "[m]embership … can be determined without reaching any legal conclusions to determine whether someone is in the class, one simply needs to answer questions … determined by objective criteria." *Panacci v. A1 Solar Power, Inc.*, No. 15-cv-00532-JCS, 2015 WL 3750112, at *8 (N.D. Cal. June 15, 2015) (internal annotations omitted).  Contrary to what Moving Defendants' argue, to determine class membership in this case the Court will ask the following series of objective, factual questions:

- Did Defendants make pre-recorded calls?

- Is Response Now vicariously liable for the acts of the co-defendants?

- Were those numbers "residential"?

- Do Defendants claim to have obtained consent to call them in the same manner Defendant claims to have obtained consent to call Plaintiff?

*See id*. at *8-9 (finding that the plaintiff's proposed Class were not fail safe because "one simply needs to answer questions such as whether the person received a certain number of phone calls from Defendants within a certain timeframe").

In rejecting a similar argument previously in a TCPA case, the Middle District of Pennsylvania rejected an identical argument over the same class definition proposed here in

11

*Jackson v. Meadowbrook Fin. Mortg. Bankers Corp.,* No. 4:22-CV-01659, 2023 U.S. Dist.

LEXIS 41211, at *7 (M.D. Pa. Mar. 10, 2023) (footnotes omitted):

Meadowbrook directs this Court to a 2015 ruling by the Honorable Stewart R. Dalzell of the United States District Court for the Eastern District of Pennsylvania in *Zarichny v. Complete Payment Recovery Services, Inc.* There, the plaintiff brought a putative class action under the TCPA on behalf of herself and similarly situated individuals who received one or more calls on their personal cell phones from the defendants using an automatic telephone dialing system without prior consent. Judge Dalzell concluded that the class was an impermissible fail-safe class because "there is no way to provide notice to that putative class without the [*8] sort of extensive fact-finding that class actions should avoid," and "at the conclusion of the litigation, should [the defendant] prevail against [the plaintiff], any other putative class recipient would be free to litigate the same claim against [the defendant]."

Nine months after his ruling in *Zarichny*, Judge Dalzell confronted a similar question—but reached a different result. In *Abella v. Student Aid Center, Inc.*, as in *Zarichny*, the defendant moved to strike the class allegations relating to violations of the TCPA, arguing that "the class definition proposed by the plaintiff was an impermissible 'fail-safe' class."**37** But Judge Dalzell concluded that the proposed class in *Abella* did not "meet[] the definition of a fail-safe class," highlighting two distinctions between the proposed classes in *Abella* and *Zarichny*: (1) unlike the proposed class in *Zarichny*, the *Abella* class "makes no reference to [the defendant's] use of an automatic telephone dialing system[,] . . . which is a required element for a claim under the TCPA"; and (2) the plaintiff in *Abella* did not "rely[] on potential class members' word when determining whether they gave [the defendant] consent to send them text messages," relying instead [*9] on the defendant's "internal records that detail whether it received consent to text certain phone numbers."

Since 2015, district courts within this circuit have consistently emphasized the latter distinction Judge Dalzell highlighted in *Abella*. For example, in *Johnson v. Ally Financial Inc.*, my colleague, the Honorable Christopher C. Conner, declined to strike class allegations concerning the following proposed class: "all persons in the United States who received a call from [the defendant] with the aid of an automatic telephone dialing system when [the defendant's] business records do not indicate it received prior consent."**39** Judge Conner held that this proposed class was not a "facially uncertifiable" fail-safe class because it was properly defined with

12

> reference to objective, factual criteria—i.e., the defendant's "business records [that] may (with discovery) reveal an ascertainable []class"—that fall "outside of the legal requirements of the [TCPA]."…
>
> Here, Jackson argues that like the plaintiffs in *Abella, Johnson, O.P. Schuman*, and *Shelton*, he elided the fail-safe concern present in *Zarichny* by making the "conscious decision to not include language about individuals who have not provided their 'prior express written consent' in the class definition." The Court agrees. The issue of whether Meadowbrook's "conduct constitutes a violation of the TCPA" is arguably a question of law and fact common to Jackson and the other proposed class members. But that alone does not render the proposed class fail-safe. The question here is whether Jackson's proposed class is defined with reference to objective, factual criteria that fall "outside of the legal requirements of the [TCPA]." Consistent with prior district court rulings in this circuit, the Court finds that it may well be.

This Court should hold the same that it did in *Meadowbrook* and deny the motion.

As to the issues of consent, it is true that some courts have previously struck class allegations in TCPA cases where the lack of consent was pled as part of the class definition. It is also true that consent under the TCPA at the time of the alleged calls could have been tendered to a third party. However, it is important to note that the cases cited by the Defendant all had class allegations struck at the pleadings stage for precisely that reason: the class definition included some variation of the language that required each class member have not provided their consent.

Defendants' argument focuses on a potential affirmative defense of consent or established business relationship (of which they've produced no evidence to support) to assert that the action in its entirety is incapable of being maintained as a class action. In rejecting the same argument previously in a TCPA case, another Court held:

> The Court finds that the defendant's motion to strike the class allegations is premature before plaintiff can develop the factual record through discovery. Loan Depot's citation of consent as a potential affirmative defense is insufficient to

13

warrant striking the putative class solely on the pleadings. The motion to strike class allegations will, therefore, be denied.

*Rosenberg v. LoanDepot.com LLC,* 435 F. Supp. 3d 308, 318 (D. Mass. 2020).

Even though Mr. Abramson does not believe that the Defendants obtained the appropriate prior express written consent for its calls with the called party because it was a current customer or established business relationship (as the calls were designed to solicit new business), the Plaintiff made a conscious decision to not include language about individuals who have not provided their "prior express written consent" in the class definition, as other federal courts *have found that* to be an impermissible fail-safe class in TCPA cases. In *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-cv-846, 2014 WL 1814076, at *8-9 (S.D. Ohio May 7, 2014), a court held that a TCPA plaintiff needed to amend his class definition because he included that language in a TCPA proposed class definition:

> Each of the Plaintiff's proposed classes is defined to include only those individuals who did not expressly consent to the receipt of the defendant's phone calls made with the use of an ATDS. Because the TCPA prohibits calls to cellular telephones using ATDSs unless prior express consent has been given, defining the class to include anyone who received such a call without prior express consent means that only those potential members who would prevail on this liability issue would be members of the class…However, if the Plaintiffs are unsuccessful in meeting their burden of proof, the class does not exist and the class is not bound by the judgment in favor of the Defendant.  [*24] This is the definition of a prohibited fail-safe class.

Other courts agree. *See e.g. Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536 (E.D. Mich. 2015). Here, the Plaintiff avoided that potentially fatal flaw in drafting.

14

Nor does the determination of the consent issue necessitate thousands of individual mini-trials as the Defendant claims. Courts do not see consent issues as problematic from a class certification perspective, particularly when there are uniform issues with the offered consent evidence. *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 972 (N.D. Cal. 2019), *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012), *Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 504 (S.D.N.Y. 2014). Second, the class definition is not overly broad because it deals with the consent issue through an analysis of the Defendant's very own records. The Plaintiff seeks to represent a class defined in part by information readily available in Defendants' internal records: whether or not they received a call from the Defendants and whether or not they provided their number to the Defendants beforehand. Provided that Defendants has records of whom it sent messages, and a record of whether or not they simply cold-called that person or instead had an inquiry or written permission, they will not have to take a putative class member's say-so that he received a call or that he didn't consent. Thus, the class is not overly broad, but rather will be accurately ascertained and notified long before the jury returns a verdict.

## VI.    A MORE DEFINITE STATEMENT IS UNWARRANTED.

Finally, Defendants alternatively seek a more definite statement under Rule 12€. Rule 12€ is reserved for pleadings that are so vague or ambiguous that a responsive pleading cannot reasonably be prepared. That standard plainly is not satisfied here. The Complaint identifies

Plaintiff's telephone number, the dates of the challenged calls, the prerecorded message delivered, Sales Streak's admitted responsibility for at least two calls, the alleged coordination between Sales Streak and PNHC, and the statutory basis for relief. ECF No. 1 ¶¶ 12–45. The Amended Motion itself demonstrates that the Moving Defendants understand the allegations, as it separately challenges the allegations concerning the identity of the callers, the prerecorded voice, injunctive relief, the proposed class, and the factual sufficiency of the claims. Because the Complaint provides fair notice of the claims asserted against Sales Streak and PNHC, Rule 12(e) affords no relief.

## CONCLUSION

The Complaint plausibly alleges that Sales Streak and PNHC participated in a coordinated telemarketing campaign, identifies facts connecting each Moving Defendant to the challenged calls, describes the artificial or prerecorded message Plaintiff received, and provides fair notice of the claims asserted. The Amended Motion asks the Court to disregard well-pleaded allegations and resolve factual questions that properly await discovery. Plaintiff respectfully requests that the Court deny Sales Streak and PNHC's Amended Motion to Dismiss, deny their alternative request for a more definite statement, and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,


/s/ *Anthony I. Paronich*
Anthony I. Paronich, *pro hac vice*
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com


## **CERTIFICATE OF SERVICE**

I hereby certify that, on July 16, 2026, I caused the foregoing to be electronically filed with the Clerk of the United States District Court for the Western District of Pennsylvania using the CM/ECF system, which will send notification of such filing to all counsel of record.


/s/ *Anthony I. Paronich*
Anthony I. Paronich